IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JABAR MABRY,
    Plaintiff,

v.                                            Civil Action No. 3:24-cv-00396 (MRC)

CO HOPKINS,
    Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on a Motion for Summary Judgment and accompanying Memorandum in Support of Motion for Summary Judgment filed by Defendant Breazhane Hopkins ("Defendant"). (ECF Nos. 39, 40.) The Motion for Summary Judgment has been fully briefed[1] and is now ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and oral argument would not aid the decisional process.[2] For the reasons set forth below, the Court GRANTS Defendant's Motion for Summary Judgment (ECF No. 39).

**I.    LEGAL STANDARD**

"Summary judgment is appropriate if the record shows that 'there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(a); *Walker v. Alliance Outdoor Grp., Inc.*, 567 F. Supp. 3d 723, 726 (E.D. Va. 2021) (quoting Fed. R. Civ. P. 56(a)). The inquiry is "whether the evidence presents a sufficient disagreement to

---

[1] Although Plaintiff styled his responsive filing (ECF No. 42) as a "Summary of Judgment," the Court will construe it as Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, and not as a separate cross Motion for Summary Judgment. *See infra* note 9.

[2] Additionally, Defendant noted that she did not request a hearing on the Motion for Summary Judgment. (*See* ECF No. 39.)

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

After a motion for summary judgment is made, "the opposing party has the burden of showing that a genuine dispute exists." *Walker*, 567 F. Supp. 3d at 726-27 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Additionally, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," but rather, there must "be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "The existence of a mere scintilla of evidence in support of the nonmoving party as well as conclusory allegations or denials, without more, are insufficient to withstand a summary judgment motion." *Walker*, 567 F. Supp. 3d at 727 (citing *Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020)).

In applying the summary judgment standard, "courts must construe the facts in the light most favorable to the nonmoving party and may not make credibility determinations or weigh the evidence." *Id*. (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007)). However, "[t]o defeat summary judgment, a nonmoving party, who will bear the burden of proof at trial on a dispositive issue, must go beyond his or her pleadings with affidavits, depositions, interrogatories or other admissible evidence to show specific facts that amount to a genuine issue for trial." *United States v. Ledwith*, 805 F. Supp. 371, 373 (E.D. Va. 1992), *aff'd*, 998 F.2d 1011 (4th Cir. 1993).

Plaintiff, Jabar Mabry ("Plaintiff"), is proceeding in this matter *pro se*. As a threshold matter, *pro se* pleadings are required to be "liberally construed" and "must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). However, "[p]rinciples requiring generous construction of *pro se* complaints are not

2

. . . without limits." *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985); *see also Lindemann-Moses v. Jackmon*, 644 F. Supp. 3d 163, 170 (M.D.N.C. 2022) (noting that "generosity is not a fantasy" and that "[t]he court is not expected to advance a pro se litigant's claim or argument or construct full blown claims from sentence fragments") (citing *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir. 1998)) (internal quotations removed).

## II. BACKGROUND

The Court endeavors to construe the facts in the light most favorable to Plaintiff as the non-moving party, including consideration of those facts that appear to stand in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, the Court recites the following narrative through such a lens, for purposes of resolving Defendant's Motion for Summary Judgment.

Plaintiff, an inmate previously housed at Riverside Regional Jail ("Riverside"),[3] brings this civil action pursuant to 42 U.S.C. § 1983 against Defendant, alleging that Defendant violated Plaintiff's constitutional rights under the Fourteenth Amendment.[4] While not specifically related to Plaintiff's present claims, the Court notes that an event occurred on

---

[3] On December 17, 2025, Plaintiff was transferred from Riverside Regional Jail to Nottoway Correctional Center. (*See* ECF No. 48.)

[4] Plaintiff cites the Fourth and Eighth Amendments; however, based on Plaintiff's status as a pre-trial detainee at the time of the incident at issue, the Due Process Clause under the Fourteenth Amendment applies. *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983); *see also Westmoreland v. Brown*, 883 F. Supp 67, 72 (E.D. Va. 1995) (noting that "the due process rights of a pretrial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner" and that "Eighth Amendment jurisprudence has addressed the contours of the term 'punishment' which lies at the core of the protection of inmates afforded by both the Eighth and Fourteenth Amendments").

February 14, 2024 at Riverside, during which an inmate named Terrell Harris ("Harris") assaulted Plaintiff. (ECF No. 40-1.) Riverside officials completed an incident report detailing the altercation. (*Id.*) Harris later became involved in an incident at the Chesterfield County Courthouse on March 19, 2024, which is the subject of Plaintiff's present claims.

Specifically, on March 19, 2024, Defendant, a Riverside Transportation Officer, "coordinat[ed] the transportation of multiple inmates to courthouses in various jurisdictions, including . . . Chesterfield County . . . ." (ECF No. 40-8 at 3.)[5] Riverside officials transported Plaintiff to the Chesterfield County Courthouse to attend a hearing scheduled for 1:00 p.m. (ECF No. 40 at 2; ECF No. 40-2.) They also transported Harris to the Chesterfield County Courthouse on the same day to attend a hearing scheduled for 9:00 a.m. (ECF No. 40-2.) Riverside officials created a list detailing who was being transported to court, which included both Harris and Plaintiff. (ECF No. 40-8.) Next to Plaintiff's and Harris's names was a handwritten note, "KS1," which was an abbreviation for "Keep Separate." (ECF No. 40-8 at 4.) This notation purportedly indicated to officials that Harris and Plaintiff should have been kept apart from one another to prevent any potential altercations. (*Id.*)

Despite the notation, however, Plaintiff and Harris were placed in the same holding cell in the Chesterfield County Courthouse on March 19, 2024. (ECF No. 40 at 3.) Video footage from the holding cell[6] initially shows Plaintiff and Harris standing at opposite ends of the holding cell, engaging in conversation. (ECF No. 40-9(B).) Plaintiff can be seen leaning against a wall, while Harris stands at the other end. (*Id.* at 00:08.) Although the video does not have audio, it is apparent that the conversation escalated, with Harris holding a brown bag and waving Plaintiff over to him.

---

[5] The Court employs the pagination utilized by the CM/ECF system.
[6] The video footage is part of the record as Exhibit 9B to Defendant's Motion for Summary Judgment. (ECF No. 40-9.)

(*Id.* at 00:14-00:19.) Within seconds, Plaintiff leaves his position against the wall and advances toward Harris. (*Id.* at 00:19-00:21.) As he approaches, Harris places the brown bag on the bench next to him, and the two begin to fight. (*Id.* at 00:20-00:22.) For roughly thirty seconds, the two can be seen fighting and exchanging blows until Plaintiff tackled Harris onto the floor and attempted to slam Harris's head into the ground. (*Id.* at 00:21-00:50.) At this point, another inmate intervened and attempted to stop Plaintiff from continuing to strike blows to Harris's head. (*Id.* at 00:50-00:53.) Plaintiff then stands up, puts Harris in a chokehold for roughly thirteen seconds, and eventually releases him. (*Id.* at 00:56-01:09.)

Afterward, the Chesterfield County Sheriff's Office informed Riverside officials about the incident, including: (1) their finding that Plaintiff was the initial aggressor;[7] (2) that criminal charges were brought against Plaintiff for his role in the fight; and (3) that neither Plaintiff nor Harris reported being injured from the fight. (ECF No. 40-4.) Subsequently, Plaintiff was convicted of misdemeanor assault and battery on April 23, 2024. (ECF No. 40-5.)

Prior to his conviction, however, Plaintiff filed three Informal Complaints and two Inmate Grievances, alleging that Riverside officials were responsible for the incident because they failed to keep Plaintiff and Harris separated in the holding cell. (ECF No. 40-6 at 2-4, 5-6.) Riverside officials deemed all of Plaintiff's complaints and grievances as "not grievable" since "Chesterfield was made aware to keep [him] separate from [Harris] due to an incident that occurred on 2.14.24." (ECF No. 40-6 at 5, 7.) Nonetheless, on May 29, 2024, Plaintiff filed this action against Defendant and Lt. Jones. (ECF No. 1.) In his Particularized Complaint,[8] Plaintiff alleges that Defendant failed

---

[7] Plaintiff disputes that he was the initial aggressor and claims that Harris threw the first punch. (ECF No. 42 at 1-3.)

[8] On November 25, 2024, Plaintiff filed his Particularized Complaint against Defendant only, resulting in the Court removing Lt. Jones as a named defendant. (ECF No. 8.)

5

to notify Chesterfield Court officials about his need to be kept separate from Harris, which led to Harris approaching him and attacking him. (ECF No. 8 ¶ 4.) Therefore, he claims that his "rights to Decent Conditions in prison/jail has [sic] been violated by [Defendant] by not providing the proper protection from another inmate . . . ." (ECF No. 8 at 1.) For relief, Plaintiff demands $350,000.

On June 20, 2025, Defendant filed her Motion for Summary Judgment (ECF No. 39) and Memorandum in Support (ECF No. 40). The Court mailed Plaintiff a Roseboro Notice on June 23, 2025. (ECF No. 41.) Thereafter, on July 16 and July 21, 2025, the Court received two letters from Plaintiff, each titled, "Summary of Judgment," in which Plaintiff disputes various facts and claims asserted in Defendant's Motion for Summary Judgment and identifies several exhibits supporting his position. (ECF No. 44.)[9] On July 22, 2025, Defendant filed her Reply Brief in Support of Motion for Summary Judgment, rendering this matter ripe for review. (ECF No. 46.)

### III.    ANALYSIS

In support of her Motion for Summary Judgment, Defendant argues that Plaintiff's § 1983 claim fails as a matter of law because: (1) Defendant did not act personally against Plaintiff; (2) Plaintiff's constitutional rights were not violated; (3) qualified immunity insulates Defendant from liability; and (4) Plaintiff failed to exhaust his administrative remedies. (ECF No. 40 at 7.)

In response, Plaintiff admits that he does "not know if [Defendant] told the other Officers to keep [him and Harris] separate." (ECF No. 42 at 3.) He also concedes that the "video did show [Plaintiff] walking up to Harris, [and] it also shows Harris swinging first at [Plaintiff]." *Id.* He

---

[9] Based on the Court's discretion in liberally construing *pro se* filings and because the deadline to file dispositive motions was June 20, 2025, the Court construes Plaintiff's letters (ECF Nos. 42 and 44) as Responses in Opposition to Defendant's Motion for Summary Judgment and not as independent motions for summary judgment.

claims self-defense as to the fight itself and maintains that he would never have been involved in the fight had Defendant notified Chesterfield officials that he should have been kept separate from Harris. *Id.*

The Court begins by addressing Plaintiff's failure to comply with Local Civil Rule 56(B), which requires parties responding to a motion for summary judgment to include a "specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute." Courts in this District have stated that Local Rule 56(B) "provides the Court with an organized framework to assess whether any material factual dispute exists and whether the movant is entitled to the relief sought." *CertusView Techs., LLC v. S&N Locating Servs., LLC*, 2015 WL 4717256, at *5 (E.D. Va. Aug. 7, 2015). If a party fails to comply with this Rule, the Court "may assume that facts identified by the moving party in its listing of material facts are admitted." Local Civ. R. 56(B). For instance, crucial facts, such as Defendant not being the driver of the transport vehicle that took Plaintiff to his court hearings on March 19, 2024 (ECF No. 40 at 11; ECF No. 40-8 ¶ 17), may be considered as admissions. However, in light of Plaintiff's filings as a *pro se* litigant, the Court will not deem any material fact as conceded simply by Plaintiff's failure to abide by Local Rule 56.

Similarly, the Court notes that Plaintiff fails to produce evidence sufficient to comply with Federal Civil Procedure Rule 56(c), which requires him to cite to the record or produce admissible materials establishing the presence of a material dispute. Fed. R. Civ. P. 56(c)(1)(A)-(B). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is

entitled to it . . . ." Fed. R. Civ. P. 56(e); *see also Blankenship v. Virginia*, 432 F. Supp. 2d 607, 611 (E.D. Va. 2006) ("Rule 56(e) requires the non-moving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.") (citation omitted). Here, Plaintiff's responses consist primarily of argument and disagreement with Defendant's evidence without citing sufficient support that would create a genuine issue for trial. Given this, the Court is justified in granting summary judgment based on Plaintiff's failure to comply with Rule 56.

Nonetheless, the Court concludes that, even when viewing any disputed evidence in the light most favorable to Plaintiff alongside the undisputed facts at-issue in this case, Plaintiff's claims should not be presented to a jury because they fail as a matter of law.

### A. Defendant Did Not Violate Plaintiff's Constitutional Rights.

"Under 42 U.S.C. § 1983, a plaintiff must establish three elements to state a cause of action: (1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." *Jenkins v. Medford*, 119 F.3d 1156, 1159–60 (4th Cir. 1997). In order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.'" *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). The defendant "must have had personal knowledge of and involvement in the alleged deprivation of [plaintiff's] rights in order to be liable." *Id*.

The parties do not dispute that, at the time relevant to Plaintiff's claims, Plaintiff was a pretrial detainee. Pretrial detainees may "state Fourteenth Amendment claims for deliberate indifference to a serious risk of harm on the purely objective basis that the 'governmental action' they challenge is not 'rationally related to a legitimate nonpunitive governmental purpose' or is

'excessive in relation to that purpose.'" *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)). The Fourteenth Amendment requires that "[p]rison officials must . . . take reasonable measures to guarantee the safety of the inmates . . . [i]n particular, prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Blankenship v. Virginia*, 432 F. Supp. 2d 607, 611 (E.D. Va. 2006) (citations and internal quotations omitted). However, "not every assault suffered by an inmate at the hands of another inmate rises to the level of a constitutional violation." *Id*. "[P]rison officials can only be held liable for a constitutional violation when the physical harm suffered by the inmate is the result of 'deliberate or callous indifference of prison officials to specific known risks of such harm.'" *Id*. (quoting *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987)).

"The deliberate indifference test require[s] the plaintiff to demonstrate (1) that he was subjected to an objective, substantial risk of serious harm and (2) that the person acting under color of law subjectively recognized and disregarded the risk of harm." *Carter v. Irving*, No. 3:24CV293, 2025 WL 1662465, at *6 (E.D. Va. June 11, 2025) (citation omitted). In cases where a pretrial detainee alleges a Fourteenth Amendment violation, the Fourth Circuit recently replaced the subjective test with an objective test when analyzing whether the defendant exposed the plaintiff to a substantial risk of serious harm. *See Short*, 87 F.4th at 611 (noting that "the plaintiff [must] show that the defendant acted or failed to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") (citations and internal quotations omitted). In the same opinion, the court reiterated that "[t]o be clear, it is still not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee." *Id*. at 611-12.

For the reasons that follow, the Court concludes that, when construing every fact in the light most favorable to Plaintiff's case, and considering each undisputed fact, no reasonable jury could conclude that Defendant personally acted in violation of Plaintiff's rights, and thereby, subjected Plaintiff to an objective, substantial risk of serious harm.

In her supporting Memorandum, Defendant claims that she did not transport Plaintiff to any of his court hearings on March 19, 2024, nor did any transportation vehicle contain Plaintiff and Harris at the same time." (ECF No. 40 at 8, 11 (citing ECF No. 40-8, ¶ 17).) In support, she notes that, as Officer PID number 138, she was assigned to transport two groups of inmates on March 19, 2024. (ECF No. 40-8 ¶¶ 13-15.) In support, she attaches a document entitled, "Transportation Log Sheet Master Control," which shows which officers were assigned to transport prisoners, where they were directed to take them, and at what time. (ECF No. 40-3.) According to Defendant, she departed Riverside at 7:40 a.m. on March 19, 2024 to the courthouses in Colonial Heights, Prince George, and Chesterfield, before returning to Riverside. (ECF No. 40-8 ¶ 14.) At 11:14 a.m., Defendant departed Riverside to transport another group of inmates to Chesterfield courthouse, before returning to Riverside at 1:29 p.m. (ECF No. 40-8 ¶ 15; ECF 40-3.)

Plaintiff does not address or dispute Defendant's contention that Plaintiff and Harris were transported separately. Indeed, Plaintiff's internal grievances indicate that he complained about being kept in the holding cell with Harris, but not that he was transported with Harris to the courthouse. In one such grievance, Riverside officials wrote that Plaintiff was "transported separately [from Harris] and Chesterfield was made aware to keep [Plaintiff] separate from [Harris]." (ECF No. 40-6 at 7.) Plaintiff did not appeal this grievance and complaint. (ECF No. 40-10 ¶ 11.) Moreover, the Transportation Log Sheet shows three vehicles departing for

10

Chesterfield courthouse on the morning[10] of March 19, 2024; Defendant participated in only two of those three transfers. (ECF No. 40-3.) Thus, it is undisputed that Plaintiff and Harris were transported separately.

However, Plaintiff maintains, without supporting materials or citation to the record, that Defendant transported him to the Chesterfield County Courthouse and failed to tell the officials there to keep him separate from Harris. (ECF No. 42 at 1, 2.) In the same Response, however, Plaintiff admits that he does "not know if [Defendant] told the other Officers to keep us[] separate." (ECF No. 42 at 3.) Here, again, Plaintiff does not support his claims with evidence beyond mere argument. At most, he argues that "Chesterfield told [him] that on the roster paper with[his] name they did not see a name to keep separate from," but, even if viewed in the light most favorable to Plaintiff, such evidence does not sufficiently support Plaintiff's claim that *Defendant* was responsible for him being placed in the holding cell with Harris. Indeed, Defendant argues that "Plaintiff was never in her custody when either the altercation occurred or at the time Plaintiff was transferred to the Sheriff's custody." (ECF No. 40 at 11.) Although Defendant "was not personally familiar" with the reason why Plaintiff and Harris were to be kept separate from one another, she nevertheless "informed the other transportation officers to convey the Keep Separate designation" to the Chesterfield County Sheriff's deputies upon their arrival at the courthouse on March 19, 2024. (ECF No. 40-8 ¶¶ 11-12.)  This is consistent with the internal grievance responses from a Riverside Official addressing Plaintiff's complaint in March and April, 2024. (ECF No. 40-6 at 7). In those responses, the Riverside official told Plaintiff that "Chesterfield Court was made aware that you were keep separates [sic] from those individuals because of an incident that occurred on

---

[10] The Court notes that the Transportation Log Sheet also indicates that Defendant participated in an afternoon transport to Chesterfield on March 19, 2024, but that vehicle departed Riverside after Plaintiff and Harris were involved in the fight at the Chesterfield courthouse.

2-14-24." (ECF No. 40-6 at 7.) Thus, Defendant maintains that Plaintiff cannot show that Defendant acted personally in the deprivation of Plaintiff's rights, as Defendant neither transported Plaintiff to the courthouse nor did she place him in the holding cell with Harris.

Moreover, whether the Chesterfield Sheriff's deputies saw the notation has no bearing on whether the notation was there to be seen or whether Defendant was responsible for ensuring its implementation. Indeed, Defendant testified that she reviewed the log containing the notation, and that she personally conveyed that instruction to those responsible for transporting Plaintiff that day. (ECF No. 40-8 ¶¶ 11-12.) Though Plaintiff appears to deny the existence of the "KS1" notation on the transportation log (Def.'s Ex. 2, ECF No. 40-2), the mere disagreement or denial, without more, is insufficient to show the existence of a material dispute of fact. (ECF No. 42 at 7.)

Here, the Court finds that Plaintiff has not shown a genuine dispute of material fact regarding whether Defendant "had personal knowledge of and involvement in the deprivation of Plaintiff's rights," as required by *Wright*. 766 F.2d at 850. Though Plaintiff may allege that Defendant failed to tell Chesterfield courthouse officials to keep him separated from Harris, the evidence in the record contradicts his claims. Not only was Harris transported separately from Plaintiff to the courthouse, but Riverside officials informed Plaintiff on two occasions that Chesterfield officials were told to keep him separated from Harris. Plaintiff does not deny that he was transported separately, and he declined to appeal the grievances forms which notified him that Chesterfield officials had been told to keep him and Harris separated.

For her part, Defendant has presented sufficient, admissible evidence supporting her contention that: (1) she saw that Harris and Plaintiff were to be kept separate from one another; (2) she told officials to relay that information to the Chesterfield courthouse officials; and (3) she neither transported Plaintiff to the courthouse nor held him in her custody on that day. Thus, the

undisputed facts would not permit any reasonable jury to conclude that Defendant acted personally in the deprivation of Plaintiff's constitutional rights, or that her conduct rises to the level required to constitute deliberate indifference.

## IV.     CONCLUSION

For the reasons stated herein, the Court will GRANT summary judgment in Defendant's favor. Even when construing the facts in the light most favorable to Plaintiff, his claims under 42 U.S.C. § 1983 fail as a matter of law. No reasonable jury could conclude otherwise. An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically, notify all counsel of record, and mail a copy to *pro se* Plaintiff.

It is SO ORDERED.

/s/ MRC
Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: March 11, 2026